# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SHIRLEY HANUSICH, ANDREW
HANUSICH,

                  **Plaintiffs,**

-vs-                                         **Case No.  6:05-cv-1481-Orl-28DAB**

C.B. FLEET HOLDING COMPANY
INCORPORATED, C.B. FLEET
COMPANY, INC.,

                  **Defendants.**

_____

# ORDER

      This cause came on for consideration without oral argument on the following motion filed herein:

| MOTION: | **PLAINTIFFS' MOTION TO COMPEL DEFENDANT C.B. FLEET COMPANY, INC., TO PROVIDE BETTER ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES AND MOTION FOR SANCTIONS (Doc. No. 18)** |
|---|---|
| FILED: | **May 24, 2006** |

**THEREON** it is **ORDERED** that the motion is **GRANTED in part**.

      Plaintiffs filed suit against the Defendants C.B. Fleet Holding Company Incorporated, and

C.B. Fleet Company, Inc. (collectively "Fleet") seeking damages arising out of Fleet's manufacture,

distribution and sale of the over-the-counter bowel cleansing product Fleet Phosopho-soda.  Plaintiff

Shirley Hanusich allegedly suffered kidney failure after using Phosopho-soda as part of a bowel

cleansing regiment prescribed by her doctor in preparation for a colonoscopy.  Plaintiffs alleges claims for strict liability, negligence, fraud, and violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204.  Plaintiffs contend that Phospho-soda was designed defectively, was unreasonably dangerous, and Fleet failed to warn Plaintiffs of the dangers.  One theory of Plaintiff's case is that, as early as 1999, Fleet was warning Australian consumers that Fleet Phospho-soda should not be used by those who are of "advanced age."  Doc. No. 18 at 3.

In this Motion to Compel, Plaintiffs seek to compel more complete responses and production of documents from Fleet regarding distributors of the product and foreign labels and warnings.  According to Fleet's Response (Doc. No. 21), it has undertaken a thorough search of its files and subsequently produced documents pertaining to the safety of the product, including adverse events and consumer complaints, medical research and literature, communications with regulatory authorities, consumer and professional labeling and warnings, and sales and marketing.  Fleet also states that it has supplemented its initial document production with documents from subsequent time period and additional categories in other Phospho-soda cases.  Fleet has provided the information on the identity of its suppliers and person who provided the information to answer the interrogatories; therefore, these are no longer at issue.

Fleet contends that there only two main areas of discovery disputes remaining: (1) discovery concerning distribution; and (2) discovery pertaining to the regulation of the product in foreign countries.

### DISTRIBUTION ISSUES

Plaintiffs seek the identity of distributors, dealers, wholesalers, brokers, shipping companies and sales personnel involved in the sale and distribution of Phospho-soda in Florida.  Fleet contends

that since it provides warnings regarding the use of its product to physicians and the physician determines whether and how the patient should use the product, information provided to distributors for placement of the product for retail sale is not relevant to Plaintiffs' claims.  Although Fleet does not communicate with distributors and wholesalers regarding professional use of the product, Fleet says if any such communications pertaining to the safety of the product existed, those communications have already been produced.

Fleet also argues that it has already identified the bates numbers of the documents produced relating to sales and marketing (although this information was not reproduced in Fleet's Response). Doc. No. 21 at 8-9.  Fleet maintains that it does not advertise the Phospho-soda to consumers. However, once Plaintiffs amended the interrogatory to read "advertise to whomever (not consumers)," Fleet subsequently responded that Ray Peninno, former Director of Marketing – Fleet Brand was responsible for advertising of the product.

However, Fleet has not identified present and former employees or representatives responsible for the sale[1] of Phosphosoda in Florida from 1990 to present.  This request can be narrowed to year 2000 to present, but aside from that, the interrogatory is reasonable.  Fleet objected that it does not "detail" doctor's offices, hospitals, or healthcare professionals in Florida.  Fleet's objection is overruled, and Fleet is **ORDERED** to respond to Interrogatory No. 4 as narrowed within 11 days of the date of this Order.

The Court finds that there are two other issues relating to interrogatories concerning distribution:  Fleet has not identified the persons at Fleet who had the most contact with the suppliers identified, although that information was sought by Plaintiffs and is relevant. *See* Doc. No. 21 at 9-10.

---

[1] The Court agrees with Fleet that the phrase "assisted with" is overly broad and will be deleted in the Interrogatory.

Plaintiff seeks to compel a jurat page for Fleet's Supplemental Answers to Interrogatories. Both requests are reasonable and Fleet is **ORDERED** to provide the information and jurat page within 11 days of the date of this Order.

### FOREIGN PRODUCT INFORMATION

Plaintiffs asked Fleet to identify all foreign countries in which Fleet sold Phospho-soda where Fleet "warns the elderly or persons of advanced age of the risks associated with the consumption of Phospho-soda." Doc. No. 18 at 4 (Interrogatory No. 2). Fleet objected that the Interrogatory sought information pertaining to the regulation of Phospho-soda labeling in foreign countries, which was either was not available in the United States or did not relate to the regulation of the product in the United States. However, Fleet subsequently agreed to produce copies of labels on Phospho-soda sold outside the United States maintained in Lynchburg, Virginia, but maintained its objection as to copies of all final versions of product labeling and packaging as sold in the foreign markets that would have to be gathered from 50 different distributors involved in the foreign markets. Fleet contends that much of the documentation pertaining to foreign labeling is maintained overseas and may have to be translated from a foreign language.

Plaintiffs argue that the information is discoverable because it is relevant to Fleet's state of the art defense and its defense that it had no knowledge of the alleged dangerous design defect. Doc. No. 18 at 8. Plaintiffs contends that Fleet should bear the cost of the search and can have an employee make "50 phone calls" to Fleet's distributors to obtain the information, but need not translate the labels. However, if the labels are not translated, then Fleet cannot answer whether there is an advisory to those of "an advanced age," if such advisory has been added by a distributor in a foreign language.

According to Fleet, it has already produced to Plaintiffs the supplemental production of foreign labeling maintained in the United States.  Doc. No. 21 at 4.  Fleet is **ORDERED** to produce a list of the foreign labeling that is **not** maintained in Lynchburg, Virginia which indicates, to the extent its distributors can provide the information, whether the labeling  contains an advisory to persons of "an advanced age."  The cost of any required translation will be borne by Plaintiffs, at their option.

**DONE** and **ORDERED** in Orlando, Florida on July 20, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record